IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GUIDANCE ENDODONTICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| DENTSPLY SIRONA INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Guidance Endodontics, LLC ("Guidance" or "Plaintiff") files this Complaint against Dentsply Sirona Inc. ("Dentsply" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., for Dentsply's infringement of Guidance's U.S. Patent Nos. 7,967,605 ("the '605 patent") and 10,052,173 ("the '173 patent") based on Dentsply's unauthorized manufacture, use, offer for sale, and/or sale within the United States and/or importation into the United States of: (i) products that infringe at least one claim of the '605 patent; and (ii) products that infringe at least one claim of the '173 patent.  The '605 patent claims important advances in the technology and design of endodontic files, and Dentsply infringes at least one claim through its manufacture, use, offer for sale, and/or sale of endodontic files for use in dental and endodontic procedures ("Dentsply Files"), including WaveOne Gold Reciprocating Files ("WOG Files"), in the United States, and/or importation of Dentsply Files into the United States.  The '173 patent claims important advances in the technology and design of endodontic obturators, and Dentsply infringes at least one claim through its manufacture, use, offer for sale, and/or sale of obturator products for use in dental and endodontic procedures ("Dentsply Obturator Products"), including WaveOne

Gold Conform Fit Gutta-Percha Points ("WOG Obturator Cones"), in the United States, and/or importation of Dentsply Obturator Products into the United States.

## PARTIES

2.      Guidance is a New Mexico limited liability company with a place of business at 161 Palmer Avenue, Winter Park, Florida 32789.

3.      Dentsply is a Delaware corporation with a principal place of business at 13320-B, Ballantyne Corporate Place, Charlotte, North Carolina 28277.

4.      Dentsply makes, uses, offers to sell, and/or sells Dentsply Files and Dentsply Obturator Products in the United States and/or imports Dentsply Files and Dentsply Obturator Products into the United States.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Dentsply because, *inter alia*, Dentsply is a corporation organized and existing under the laws of the State of Delaware.

7.      Dentsply is also subject to personal jurisdiction in this Court because it has committed acts, and will continue to commit acts, of patent infringement under 35 U.S.C. § 271 in Delaware.  These acts have led, and will lead, to foreseeable harm and injury to Guidance in Delaware.  For example, Dentsply has made, used, offered for sale, and/or sold Dentsply Files and Dentsply Obturator Products in the United States, and/or imported those products into, the United States, including Delaware.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) because, *inter alia*, Dentsply is a corporation organized and existing under the laws of the State of Delaware.

**THE PATENTS-IN-SUIT**

9.     On June 28, 2011, the '605 patent, titled "Endodontic Files and Obturator Devices and Methods of Manufacturing Same" was duly and legally issued with Guidance as assignee. A true and correct copy of the '605 patent is attached as **Exhibit 1**.

10.     Guidance is the owner of the '605 patent and has the right to bring this lawsuit and recover damages for any past, current, or future infringement of the '605 patent.

11.     The '605 patent is directed to endodontic files used in dental and endodontic procedures, including, for example, root canal surgery.  It discloses and claims novel endodontics files, including endodontic files with multiple rates of taper and rake angles that continuously increase along the working length from the tip to the shank.  *See* **Exhibit 1**.  More specifically, the '605 patent relates to endodontic files with a tip, a shank, and a working length disposed between the tip and the shank, the working length having a helical cutting edge defining a rake angle, wherein the rake angle varies between the tip and the shank, and wherein the taper configuration of the file incudes at least two different rates of taper, the taper configuration of the file arranged such that a rate of taper closer to the shank is smaller than a rate of taper closer to the tip, wherein the rake angle continuously increases along the working length from the tip to the shank.  *Id.*

12.     The '605 patent is valid and enforceable.

13.     Dentsply is not licensed to practice the '605 patent.

14.     On August 21, 2018, the '173 patent, titled "Endodontic Files and Obturator Devices and Methods of Manufacturing Same" was duly and legally issued with Guidance as assignee.  A true and correct copy of the '173 patent is attached as **Exhibit 2**.

15.     Guidance is the owner of the '173 patent and has the right to bring this lawsuit and recover damages for any past infringement of the '173 patent.

16.     The '173 patent is directed to endodontic obturator devices used in dental procedures, including, for example, root canal surgery.  It discloses and claims novel endodontic obturator devices, including endodontic obturators with multiple rates of taper that decrease from the tip to the shank.  *See* **Exhibit 2**.  More specifically, the '173 patent relates to endodontic obturators with a tip, a shank, at least one obturator portion between the tip and the shank , the at least one obturator portion configured to at least partially enter a root canal of a tooth over its length and comprising a body defining a taper, a material layer containing gutta-percha, rubber, or resin applied to the body, wherein at least one obturator portion includes, in a direction from the tip towards the shank, a first tapered obturator portion, a second tapered obturator portion, and a third tapered obturator portion that are adjacent, have a solid cross section throughout a width of the obturator, and are of equal length; wherein the first, second, and third tapered obturator portions are tapered in a longitudinal direction of the body with only one rate of taper that differs and is variable, decreasing, or increasing relative to other portions; and wherein the rate of taper in the first tapered obturator portion is greater than the rate of taper for the second tapered obturator portion and the rate of taper for the second tapered obturator portion is greater than the rate of taper for the third tapered obturator portion.

17.     The '173 patent is valid and enforceable.

18.     Dentsply is not licensed to practice the '173 patent.

## DENTPLY'S INFRINGEMENT

19.     Dentsply has infringed, and continues to infringe, directly and indirectly: (i) one or more claims of the '605 patent by making, using, offering to sell, and/or selling the Dentsply Files within the United States, and/or importing the Dentsply Files into the United States; and (ii) one or more claims of the '173 patent by making, using, offering to sell, and/or selling the Dentsply

Obturator Products within the United States, and/or importing the Dentsply Obturator Products into the United States.

*'605 Patent*

20.    A true and correct copy of a sales brochure for the WOG Files is attached as **Exhibit 3**.

21.    A true and correct copy of Clifford J. Ruddle, DDS, "Single-File Shaping Technique Achieving a Gold Medal Result" *Dentistry Today* (January 2016) is attached as **Exhibit 4**. On information and belief, Dr. Ruddle was a member of the WOG Files "design team." *See* **Exhibit 3**, p. 4.

22.    A true and correct copy of the "WaveOne Gold Scientific Manual" is attached as **Exhibit 5**.

23.    A true and correct copy of the "WaveOne Gold Endodontic Files" webpage is attached as **Exhibit 6**.

24.    A true and correct copy of Dentsply's U.S. Patent No. 9,901,418 for "Endodontic Instruments" is attached as **Exhibit 7**.

25.    Claim 1 of the '605 patent recites:

An endodontic file comprising:

a tip;

a shank; and

a working length disposed between the tip and the shank, the working length having a helical cutting edge defining a rake angle, wherein the rake angle varies between the tip and the shank, and wherein the taper configuration of the file includes at least two different rates of taper, the taper configuration of the file arranged such that a rate of taper closer to the shank is smaller than a rate of taper closer to the tip, wherein the rake angle continuously increases along the working length from the tip to the shank.

26.     The Dentsply Files are endodontic files.  For example, Dentsply describes its WOG Files as "WaveOne® Gold Endodontic Files."  *See* **Exhibit 6**, p. 1.



27.     The Dentsply Files include a tip.  **Exhibit 3**, p. 2 (annotated).



For example, Dentsply states that its WOG files have an "Optimized tip."  *Id.*  Dentsply further states that "each WaveOne Gold file has a newly designed, semi-active guiding tip, which enables the file to more readily follow and safely progress along manually reproduced and secured canals." **Exhibit 4**, pp. 2-3; *see also id.*, p. 4.

28.     The Dentsply Files include a shank.  **Exhibit 3**, p. 2 (annotated).



For example, Dentsply states that its WOG Files "have a shank of 11 mm in order to give a better access to molars."  **Exhibit 5**, p. 7.

29.     The Dentsply Files include a working length disposed between the tip and the shank, the working length having a helical cutting edge defining a rake angle, wherein the rake angle varies between the tip and the shank, and wherein the taper configuration of the file includes at least two different rates of taper, the taper configuration of the file arranged such that a rate of taper closer to the shank is smaller than a rate of taper closer to the tip, wherein the rake angle continuously increases along the working length from the tip to the shank.  **Exhibit 3**, p. 2 (annotated).



For example, Dentsply states that its WOG Files come in "three working lengths."  **Exhibit 3**, p. 5; **Exhibit 5**, p. 8.  Dentsply states that the WOG Files have a "reverse helix design."  **Exhibit 4**, p. 3.  Dentsply further states that the WOG Files are "[d]esigned with a reverse cutting helix, [such that] the files engage and cut dentine . . . ."  **Exhibit 5**, p. 4.  Dentsply states that the WOG Files include a "[v]ariable taper," with "a fixed taper from D1-D3, yet a progressively decreasing percentage tapered design from D4-D16."  **Exhibit 3**, pp. 2, 6, 8; **Exhibit 4**, p. 2; *see also* **Exhibit 5**, p. 4 (WOG Files are "progressively tapered").  Dentsply depicts the WOG Files "decreasing percentage tapered design" in Figure 3 of **Exhibit 4,** p. 2, as shown below.



*Figure 3. A decreasing percentage tapered design improves flexibility and conserves remaining dentin in the body of the prepared canal.*

Dentsply similarly depicts the multiple rates of taper in Figure 3 of **Exhibit 5**, p. 8 as shown below.



Dentsply states that its WOG Files have a "patent-protected . . . parallelogram cross-section," like the one depicted in Figure 2 of **Exhibit 5**, as shown below.



**Figure 2:**
*SEM image of the parallelogram cross-section of a Medium WaveOne® Gold instrument, showing the reciprocating motion (white arrows and lines showing the counterclockwise motion and blue arrows and line showing the clockwise motion).*

**Exhibit 5**, p. 7; *see also* **Exhibit 4**, pp. 2-3. Dentsply further states that its WOG Files have an "alternating offset and transitioning parallelogram-shaped cross-section." **Exhibit 4**, p. 2.



**Exhibit. 3**, p. 2. Dentsply states that in an endodontic file with "an axis of rotation that is off-centered" and "a parallelogram-shaped cross section" like the WOG Files, "preferably the acute angle is larger at the tip and decreases as it approaches the shank," as shown in Figures 7A and 7B of **Exhibit 7** below.



FIG. 7




FIG. 7A          FIG. 7B

**Exhibit 7**, Abstract, 5:23-24, 7:13-20, 7:36-46, Figs. 4, 4A, 7, 7A.

30.     As detailed below, Dentsply's manufacture, use, offer to sell, or sale of the Dentsply Files within the United States, or importation of the Dentsply Files into the United States, infringes at least claim 1 of the '605 patent pursuant to 35 U.S.C. § 271(a)-(c).

*'173 Patent*

31.     A true and correct copy of a sales brochure for the WOG Obturator Cones is attached as **Exhibit 8**.

32.     A true and correct copy of the Dentsply webpage for WOG Obturator Cones is attached as **Exhibit 9**.

33.     A true and correct copy of the Dentsply WaveOne® Gold Solution Guide is attached as **Exhibit 10**.

34.     A true and correct copy of the Dentsply Ribbon Root Canal Sealer webpage is attached as **Exhibit 11**.

35.     Claim 1 of the '173 patent recites:

An endodontic obturator, comprising:

a tip region at a distal end of the obturator;

a shank region at a proximal end of the obturator;

at least one obturator portion between the tip region and the shank region, the at least one obturator portion configured to at least partially enter a root canal of a tooth over its length and comprising a body defining a taper; and

a material layer containing gutta-percha, rubber, or resin applied to the body;

wherein the at least one obturator portion includes, in a direction from the tip region towards the shank region, a first tapered obturator portion, a second tapered obturator portion, and a third tapered obturator portion,

wherein each of the first tapered obturator portion, the second tapered obturator portion, and the third tapered obturator portion are tapered in a longitudinal direction of the body and have a solid cross section throughout a width of the obturator,

wherein respective rates of taper along respective portions of the body differ between the first tapered obturator portion, the second tapered obturator portion, and the third tapered obturator portion,

wherein the different rates of taper along each of the first tapered obturator portion, the second tapered obturator portion, and the third tapered obturator portion relative to each other are one of variable, decreasing, and increasing,

wherein the first tapered obturator portion, the second tapered obturator portion, and the third tapered obturator portion are of equal length, and each tapered obturator portion includes only one rate of taper, and,

wherein the first tapered obturator portion is adjacent to the second tapered obturator portion and the rate of taper for the first tapered obturator portion is greater than the rate of taper for the second tapered obturator portion, and the second tapered obturator portion is adjacent to the third tapered obturator portion and the rate of taper for the second tapered obturator portion is greater than the rate of taper for the third tapered obturator portion.

36.    The Dentsply Obturator Products are endodontic obturators.  *See* **Exhibit 3**, p. 5 ("Dedicated WaveOne® Gold obturation products include . . . variable tapered Conform Fit™ gutta-percha points.")

37.     The Dentsply Obturator Products include a tip region at the distal end of the obturator.



**Exhibit 9**, p. 1.

38.     The Dentsply Obturator Products include a shank region at a proximal end of the obturator.



*Id.*

39.     The Dentsply Obturator Products include at least one obturator portion between the tip region and the shank region configured to at least partially enter a root canal of a tooth over its length and comprising a body defining a taper.



**Exhibit 3**, p. 7.

    40.    The Dentsply Obturator Products include a material layer containing gutta-percha, rubber, or resin applied to the body.  As the WaveOne® Gold Solution guide explains "Ribbon® sealer [is used] to seal canals with cold or warm obturation techniques, matching WaveOne® Gold Conform Fit® gutta-percha points."  **Exhibit 10**, p. 1.  The Dentsply Ribbon® Root Canal Sealer is an "epoxy-amine resin" that "is compatible with warm and cold techniques."  **Exhibit 11**, p. 2.

    41.    The Dentsply Obturator Products include at least one obturator portion that includes, in a direction from the tip towards the shank, a first tapered obturator portion, a second tapered obturator portion, and a third tapered obturator portion that are adjacent, have a solid cross section throughout a width of the obturator, and are of equal length; wherein the first, second, and third tapered obturator portions are tapered in a longitudinal direction of the body with only one rate of taper that differs and is variable, decreasing, or increasing relative to other portions; and

wherein the rate of taper in the first tapered obturator portion is greater than the rate of taper for the second tapered obturator portion and the rate of taper for the second tapered obturator portion is greater than the rate of taper for the third tapered obturator portion.

42.    Dentsply Obturator Products are "reformulated to match the precise shapes created by the WaveOne® Gold instruments," include a "Variable taper," a "Precise fit," and are "Part of a system based solution." **Exhibit 3**, p. 7.  They are also sized to correspond to the Dentsply Files. *See id.*, p. 8.



Conform Fit™ gutta-percha points for WaveOne® Gold

Box of 60x Variable Tapered
Gutta Percha Points

| | |
|---|---|
| Small | WGGPCS |
| Primary | WGGPCP |
| Medium | WGGPCM |
| Large | WGGPCL |

Dentsply Obturator Products have "[p]recision-matched shapes and sizes [to] remove the guesswork" and are "[u]se[d] [] with corresponding files." **Exhibit 8**, pp. 3-6; *see also* **Exhibit 9**, p. 1 ("WaveOne Gold Conform Fit gutta-percha points are system-matched to the size of the canals prepared with WaveOne Gold Files.")  Dentsply depicts the WOG Files "decreasing percentage tapered design" in Figure 3 of **Exhibit 4,** p. 2, as shown below.



*Figure 3. A decreasing percentage tapered design improves flexibility and conserves remaining dentin in the body of the prepared canal.*

Dentsply similarly depicts the multiple rates of taper in Figure 3 of **Exhibit 5**, p. 8 as shown below.



The Dentsply Files' decreasing rate of taper from tip to shank includes adjacent first, second, and third portions of equal length with only one rate of taper in each portion, wherein the rate of taper in the first tapered obturator portion is greater than the rate of taper for the second tapered obturator

portion and the rate of taper for the second tapered obturator portion is greater than the rate of taper for the third tapered obturator portion.

43.    As detailed below, Dentsply's manufacture, use, offer to sell, or sale of the Dentsply Obturator Products within the United States, or importation of the Dentsply Obturator Products into the United States, infringes at least claim 1 of the '173 patent pursuant to 35 U.S.C. § 271(a)-(c).

*Dentsply's Knowledge of the '605 and '173 Patents*

44.    A true and correct copy of a June 19, 2019, Original Application from the prosecution of U.S. Patent Appl. No. 16/445,762 is attached as **Exhibit 12**.

45.    A true and correct copy of a July 22, 2022 Office Action from the prosecution of U.S. Patent Appl. No. 16/445,762 is attached as **Exhibit 13**.

46.    A true and correct copy of a February 6, 2023 Office Action from the prosecution of U.S. Patent Appl. No. 16/445,762 is attached as **Exhibit 14**.

47.    Dentsply had knowledge of the '605 and '173 patents prior to the filing of this lawsuit.

48.    For example, Dentsply has had actual knowledge of the '605 patent since at least August 24, 2020, when a letter was sent to Dentsply's counsel informing Dentsply that certain Dentsply Files infringe claims of the '605 patent.  U.S. Patent Appl. No. 11/081,974, which issued as the '605 patent, is the parent application of U.S. Appl. No. 13/016,050, which issued as the '173 patent.  At least as of August 24, 2020, Dentsply would have been aware of the '173 patent and the Dentsply Obturator Products' infringement of the same because Dentsply was aware that the Dentsply Files, which are part of the same treatment system, infringe the related '605 patent.

49.     As another example, Dentsply was also aware of the '173 patent because the United States Patent and Trademark Office (the "Patent Office") rejected Dentsply's U.S. Patent Appl. No. 16/445,762 (the "'762 application") over the published application for the '173 patent.  On June 19, 2019—almost a year after the '173 patent issued—Dentsply filed the '762 application, entitled "Multi-Taper Dental Root Canal Filling Points/Cones and Process of Making Same." **Exhibit 12**.  The claims of the '762 application were directed to "cones for dental root canal fillings" "made of dental Gutta Percha material" with "a multi-taper conical structure" wherein "the tapers vary in small, discrete incremental steps," including "a first conical section having a first taper" at the "tip end," "a second conical section having a second taper . . . smaller than the first taper," and "third conical section having a third taper smaller than the second taper."  *Id.*, pp. 23-24.

50.     On July 22, 2022, the Patent Office issued an Office Action rejecting the claims of Dentsply's '762 application over the cited prior art, finding that the published application for the '173 patent (U.S. Patent Appl. Publ. No. 2011/0129793) disclosed each of these features recited by the claims.  **Exhibit 13**, pp. 3-7.  Dentsply failed to respond to this Office Action, and the '762 application was abandoned on February 6, 2023.  **Exhibit 14**.  More specifically, on information and belief, Dentsply reviewed the Office Action rejecting the claims of its '762 application, reviewed the descriptions of the claimed features in the published application for the '173 patent, and decided to abandon prosecution of '762 application after concluding the claimed features were already described in the '173 patent, which further confirms Dentsply's knowledge of the '173 patent and its relevance to the Dentsply Obturator Products.

51.     Since the start of the damages period (six years prior to the filing of this Complaint), Guidance has complied with the statutory requirements to obtain pre-suit damages pursuant to

35 U.S.C. § 287(a). Guidance has not made, used, offered for sale, or sold in the United States, or imported into the United States any products that practice any claim of the '605 or '173 patents. Further, Guidance has taken reasonable steps to ensure marking by any licensee making, using, offering to sell, and/or selling in the United States or importing into the United States a patented article.

52.     In addition, the August 24, 2020 letter sent to Dentsply's counsel gave Dentsply actual notice of its infringement of the '605 patent through making, using, offering for sale, and/or selling Dentsply Files in the United States, and/or importing Dentsply Files into the United States.

53.     Based on its knowledge of the '605 and '173 patents and the belief that Dentsply Files and Dentsply Obturator Products infringed the same since at least as early as August 24, 2020, Dentsply chose to deliberately and intentionally infringe the '605 and '173 patents by making, using, offering for sale, and/or selling the Dentsply Files and Dentsply Obturator Products in the United States and/or importing the Dentsply Files and Dentsply Obturator Products into the United States. On information and belief, Dentsply's infringement has been and continues to be deliberate, intentional, egregious, willful, and in reckless disregard of the valid patent claims of the '605 and '173 patents.

## COUNT I: PATENT INFRINGEMENT OF U.S. PATENT NO. 7,967,605

54.     Guidance realleges and incorporates by reference the allegations set forth in paragraphs 1-53 of this Complaint.

55.     Dentsply makes, uses, offers for sale, and/or sells within the United States, and/or imports into the United States, the Dentsply Files, which infringe at least claim 1 of the '605 patent under 35 U.S.C. § 271.

56.     Dentsply has directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '605 patent pursuant to 35 U.S.C. § 271(a)

by the making, using, offering to sell, and/or selling the Dentsply Files in the United States, and/or importing the Dentsply Files into the United States.

57.     Dentsply has induced, and continues to induce, infringement of at least claim 1 of the '605 patent pursuant to 35 U.S.C. § 271(b) by encouraging others, including, for example, manufacturers, suppliers, and customers to take actions that Dentsply knew would lead to infringement of the '605 patent.  For example, Dentsply provides advertising, marketing, sales, customer support, and other materials instructing customers and other users regarding how to use the Dentsply Files in the United States in a manner that infringes.

58.     Dentsply has contributorily infringed, and continues to contributorily infringe, at least claim 1 of the '605 patent pursuant to 35 U.S.C. § 271(c) by offering to sell and/or selling in the United States and/or importing into the United States Dentsply Files for use in practicing claims of the '605 patent while knowing that the Dentsply Files are especially made and/or especially adapted for use in infringement of the '605 patent and are not a staple article or commodity of commerce suitable for substantial noninfringing use.  For example, the Dentsply Files cannot be used in a manner that does not infringe because they embody each limitation of at least claim 1 of the '605 patent.

59.     As a result of Dentsply's infringement of the '605 patent, Guidance has suffered monetary damages and is entitled to a judgment in an amount adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the inventions covered by Guidance's '605 patent, together with interest and costs as fixed by the Court.

60.     Dentsply's infringement of the '605 patent has been, and continues to be, knowing, deliberate, intentional, egregious, willful, and reckless, entitling Guidance to enhanced damages.

61.     This case is exceptional, and Guidance is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**COUNT II: PATENT INFRINGEMENT OF U.S. PATENT NO. 10,052,173**

62.     Guidance realleges and incorporates by reference the allegations set forth in paragraphs 1-61 of this Complaint.

63.     Dentsply makes, uses, offers for sale, and/or sells within the United States, and/or imports into the United States, the Dentsply Obturator Products, which infringe at least claim 1 of the '173 patent under 35 U.S.C. § 271.

64.     Dentsply has directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, at least claim 1 of the '173 patent pursuant to 35 U.S.C. § 271(a) by at least making and using the Dentsply Obturator Products in the United States, including by making and using Dentsply Obturator Products in testing, quality assurance, demonstrations, marketing, and/or training.

65.     Dentsply has induced, and continues to induce, infringement of at least claim 1 of the '173 patent pursuant to 35 U.S.C. § 271(b) by encouraging others, including, for example, manufacturers, suppliers, and customers to take actions that Dentsply knew would lead to infringement of the '173 patent.  For example, Dentsply provides advertising, marketing, sales, customer support, and other materials instructing customers and other users regarding how to use the Dentsply Obturator Products in the United States in a manner that infringes.

66.     Dentsply has contributorily infringed, and continues to contributorily infringe, at least claim 1 of the '173 patent pursuant to 35 U.S.C. § 271(c) by offering to sell and/or selling in the United States and/or importing into the United States Dentsply Obturator Products for use in practicing claims of the '173 patent while knowing that the Dentsply Obturator Products are especially made and/or especially adapted for use in infringement of the '173 patent and are not a

staple article or commodity of commerce suitable for substantial noninfringing use. For example, the Dentsply Obturator Products cannot be used in a manner that does not infringe because their use as intended by Dentsply embodies each limitation of at least claim 1 of the '173 patent.

67.     As a result of Dentsply's infringement of the '173 patent, Guidance has suffered monetary damages and is entitled to a judgment in an amount adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the inventions covered by Guidance's '173 patent, together with interest and costs as fixed by the Court.

68.     Dentsply's infringement of the '173 patent has been, and continues to be, knowing, deliberate, intentional, egregious, willful, and reckless, entitling Guidance to enhanced damages.

69.     This case is exceptional, and Guidance is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

Guidance hereby demands trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Guidance respectfully requests that this Court enter judgment against Dentsply as follows:

A.     Enter judgment that Dentsply has infringed one or more claims of the '605 patent and the '173 patent;

B.     Award Guidance damages adequate to compensate it for the past, present, and any continuing or future patent infringement up until the expiration of the '605 patent, and in no event less than a reasonable royalty, in accordance with 35 U.S.C. § 284, in an amount to be determined at trial as well as pre-judgment and post-judgment interest thereon;

C.     Award Guidance damages adequate to compensate it for the past patent infringement up until the expiration of the '173 patent, and in no event less than a reasonable

royalty, in accordance with 35 U.S.C. § 284, in an amount to be determined at trial as well as pre-judgment and post-judgment interest thereon;

       D.     Enter judgement that Dentsply's infringement was and is willful and that Guidance's damages assessed under 35 U.S.C. § 284 be trebled;

       E.     Order that Dentsply be enjoined from engaging in further infringing activities with respect to the '605 patent;

       F.     Declare this case exceptional pursuant to 35 U.S.C. §285 and award Guidance its reasonable attorneys' fees, expenses and costs incurred; and

       G.     Grant such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiff Guidance Endodontics, LLC*

OF COUNSEL:

Jeffrey S. Ginsberg
Ryan J. Sheehan
Matthew B. Weiss
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
(212) 336-2000

September 9, 2025