**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| GUIDANCE ENDODONTICS, LLC., | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 25-1123 |
| DENTSPLY SIRONA INC., | § § | |
| *Defendant.* | § § § § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Guidance Endodontics, LLC ("Guidance") filed this patent infringement lawsuit alleging that defendant Dentsply Sirona Inc. ("Dentsply") infringes United States Patent Nos. 7,967,605 ("the '605 patent") and 10,052,173 ("the '173 patent") (collectively, "the asserted patents"). D.I. 1. Dentsply has moved to dismiss Guidance's allegations on several different grounds. D.I. 14. For the reasons set forth below, the motion is granted in part and denied in part.

**I.    Background**

The asserted patents are directed to devices used in performing dental root canal surgery. After the dental surgeon cuts a hole in the tooth surface to allow access to the patient's tooth root, the surgeon uses a file or drill bit to remove tissue from the inner root canal. '605 patent, col. 1, ll. 23–32. After removing sufficient tissue from the canal, the surgeon uses an obturator to fill the void in the canal resulting from the removal of the root tissue. *Id.* at col. 2, ll. 7–16. The '605 patent is directed to files that are used in the root canal surgery, while the '173 patent is directed to obturators that are used to close the opening in the tooth left by the surgery.

Guidance has alleged that Dentsply's WaveOne Gold Reciprocating Files ("WOG Files") infringe the '605 patent and that its WaveOne Gold Conform Fit Gutta-Percha Points ("WOG Obturator Cones" or "obturators") infringe the '173 patent. D.I. 1 ¶ 1. Guidance alleges that Dentsply's products infringe the respective patents directly. In addition, Guidance alleges for both patents that Dentsply has engaged in induced and contributory infringement, and that Dentsply's infringement has been willful. D.I. ¶¶ 53, 57, 58, 60, 65, 66, 68.

Guidance alleges that Dentsply had notice of the '605 patent and was aware of Dentsply's likely infringement of that patent from at least August 24, 2020, when a letter was sent to Dentsply's counsel alleging that certain of Dentsply's files infringed the '605 patent. *Id.* ¶ 48. Guidance has alleged that Dentsply had notice of the '173 patent at least as of that date, based on the fact that the WOG Obturator Cones are part of "the same treatment system" as the files. *Id.* Guidance further argues that Dentsply would have had notice of the '173 patent and Dentsply's likely infringement of that patent from at least July 22, 2022. That was the date on which the United States Patent and Trademark Office ("the Patent Office") rejected Dentsply's U.S. Patent Application No. 16/445,762 ("the '762 application") in view of a published application that ultimately issued as the '173 patent. That rejection was based on a patent examiner's finding that the application disclosed each of the features recited by the proposed claims.[1] D.I. 1 ¶¶ 49–50.

Dentsply raises four main arguments in its motion to dismiss. It argues (1) that Guidance fails to allege that Dentsply's products meet each limitation of the asserted claims; (2) that Guidance's willful infringement allegations are legally deficient; (3) that Guidance fails to state a

---

[1] It does not appear that the Patent Office based its rejection on the issued '173 patent itself, even though that patent had issued several years prior to the rejection.

claim for indirect infringement; and (4) that the damages period for the asserted patents is limited. D.I. 15.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted."  The Third Circuit has instructed district courts to conduct a two-part analysis in evaluating a motion to dismiss for failure to state a claim.  First, the district court must separate the factual and legal elements of the claims.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id*. at 210–11.  Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III.   Discussion

### A. Whether Guidance Sufficiently Alleges that Dentsply's Products Satisfy Each Limitation of the Asserted Claims

Dentsply argues that Guidance has failed to adequately allege that the accused products infringe the asserted claims of either patent in suit.

"Literal infringement requires that each and every limitation set forth in a claim appear in an accused product."  *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005).  A plaintiff "cannot assert a plausible claim for infringement" simply by "reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).  Rather, the plaintiff must present "some

factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.*

### i. The '605 Patent (WOG Files)

Claim 1 of the '605 patent claims an endodontic file comprising three parts: (1) a tip; (2) a shank; and (3) a working length having certain features. Dentsply's arguments are directed to the features of the "working length" of the file. Specifically, claim 1 requires that the working length of the file have a "rake angle" that both "varies between the tip and the shank" and "continuously increases along the working length from the tip to the shank." Dentsply alleges that Guidance's complaint includes no allegations that the accused WOG Files have a rake angle that varies between the tip and shank or that the rake angle continuously increases along the working length of the file. D.I. 15 at 6.

Guidance responds that the complaint alleges each of the elements of the claim. For the "rake angle" features, Guidance argues that the complaint points to features of the files having a "parallelogram cross-section" that meets the varying and continuously increasing rake angle limitations of the '605 patent. D.I. 18 at 7.

In its reply, Dentsply argues that Guidance has provided "little to no factual allegations about the rake angle limitations." Dentsply contends that Guidance's allegations are "only a conclusory recitation of the claim language . . . without any attempt to connect them to the rake angle limitations," and that the complaint fails to put Dentsply on fair notice of the factual bases for Guidance's allegations of infringement. *Id.* at 2–3.

I find that Guidance's allegations relating to the rake angle and its variability are sufficient to satisfy Guidance's pleading burden. Guidance has alleged that the WOG Files have an "alternating offset and transitioning parallelogram-shaped cross-section" and that "the acute angle

is larger at the tip and decreases as it approaches the shank." D.I. 1 ¶ 29. To support those allegations, Guidance has cited to U.S. Patent No. 9,901,418 ("the '418 patent"), which is owned by Dentsply. That patent contains the figures depicted below, which show the parallelogram-shaped cross section and how it varies to change the rake angle.



*Id.*; D.I. 1-1, Exh.7 (the '418 patent), Figs. 7A–7B; D. I. 1 ¶ 29.

As described in the asserted patents and illustrated in the relevant figures, the "rake angle" is measured as the angle between the "first side" of the cutting edge and the radius of the file. '605 patent, col. 10, line 9, through col. 10, line 15, col. 11, ll. 14–18. For example, Figure 4 of the asserted patents provides the following image, which depicts the rake angle as feature number 1101.

5



FIG.4

Guidance asserts that the geometry of the WOG Files is consistent with the images shown in the '418 patent. Guidance also points to marketing materials for the files, which show that the WOG Files have a rake angle that continuously increases from the tip to the shank. *See, e.g.*, D.I. 1-1, Exh. 4 at 2 (providing images of the taper and parallelogram-shaped cross section of the WOG Files). Those factual allegations are sufficient to state a claim of infringement.

   *ii.  The '173 Patent (obturators)*

Claim 1 of the '173 patent claims an endodontic obturator comprising (1) a tip; (2) a shank; (3) an obturator portion between the tip and the shank with certain features including first, second, and third tapered obturator portions; and (4) a material layer containing gutta-percha, rubber, or resin applied to the body of the obturator.

Dentsply argues that Guidance has failed to allege that the three tapered obturator portions (1) have equal lengths, (2) have solid cross sections, (3) include only one rate of taper, and (4)

6

have a tapered portion in which the rate of taper decreases from one section of the obturator to the next. D.I. 15 at 7. Dentsply alleges that, at most, Guidance merely recites the claim language in a conclusory fashion without providing any factual support for its allegations.

Dentsply's arguments are largely based on the fact that Guidance's complaint relies on the features of the WOG Files and not the obturators themselves. The complaint alleges that the obturators "match the precise shapes created by the [WOG] instruments." D.I. 1 ¶ 42. Dentsply argues that Guidance has identified "no evidence showing any structure for the taper limitations" and that Guidance's complaint relies instead on a "posited inferential leap—based on nothing more than conclusory say-so that the claimed structure necessarily exists." D.I. 15 at 8–9.

In response, Guidance argues that it relies on "Dentsply's own documents" to show that the WOG Files provide "evidence of the shape of the tapered portions of the corresponding Obturator Cones" because Dentsply's marketing materials represent that the obturators "match the precise shapes" of the WOG Files. D.I. 18 at 10–11. Guidance's argument is that the obturators have the same geometry as the WOG Files, and that describing the geometry of the WOG Files is sufficient to allege the geometry of the corresponding obturators.[2]

In reply, Dentsply argues that Guidance has relied on improper mixing-and-matching of the products to support its allegations. D.I. 19 at 4. Dentsply also argues that while the files and obturators "may be used together, they perform different functions and have divergent structural characteristics." *Id.* Even if Guidance's characterization were to be accepted, Dentsply argues, the WOG Files (and therefore by extension the obturators) are shown to have tapered portions of

---

[2] It is puzzling why Guidance relies on the shape of the WOG Files to support its allegations regarding the shape of the obturators, as it would appear that Guidance would have access to the accused obturators and could measure them directly. For pleading purposes, however, Guidance's indirect method of alleging the shape and size of the obturators is sufficient.

varying lengths, which demonstrates that the obturators cannot satisfy the limitation requiring that the three tapered portions must be of equal length. *Id.* at 4–5.

Dentsply's strongest argument regarding Guidance's direct infringement claim as to the obturators is that Guidance has failed to allege that the obturators meet at least the claim limitation that the adjacent first, second, and third "tapered obturator portion[s] are of equal length." Claim 1 of the '173 patent requires both that (1) "the first tapered obturator portion is adjacent to the second tapered obturator portion . . . and the second tapered obturator portion is adjacent to the third tapered obturator portion" and (2) "the first tapered obturator portion, the second tapered obturator portion, and the third tapered obturator portion are of equal length."

Guidance's complaint relies in part on an image that shows five sizes of the WOG Files in profile view and notes the rate of taper at various points along their lengths. The figure on which Guidance primarily relies to support its allegations of infringement is shown below:



**Figure 3:**
*Glider, Small, Primary, Medium and Large instrument (In circles: ISO sizes).*

8

D.I. 1 ¶ 42; D.I. 1-1,  Exh. 5 at 8; *see also* D.I. 1-1, Exh. 4 at 2 (providing additional images and descriptions of the progressively decreasing diameter of the devices along those lengths). Guidance relies on that image to support its allegation that the obturators have three adjacent portions of equal lengths.  D.I. 1 ¶ 42.

The image above (designated as Figure 3) shows that the depicted WOG Files have four tapered sections, and it sets forth the lengths of each of the tapered sections.  Moving from the tip to the shank (right to left as shown in the image) the image shows that those tapered portions have lengths of 3-5mm, 3mm, 4mm, and 3mm, respectively.  If the four separate sections of the files marked on the exhibit correspond to the "portions" referred to in claim 1 of the '173 patent, there are no more than two adjacent tapered portions that are of the same length, even in iterations in which the first section near the tip is 3mm in length.  For that reason, Dentsply argues that Guidance's pleading actually shows that the accused obturators do not infringe.

Because of the way this issue was raised in the briefing, this issue was not fully joined by the time the briefing was complete;[3] I therefore held a hearing to address this issue, among others. At the hearing, Guidance argued that the sections of the WOG files depicted in the exhibit do not necessarily correspond to the "tapered obturator portions" recited in the '173 patent.  As Guidance explained, the section of the files shown on the exhibit as being 4 mm long[4] can be viewed as a portion that is 3 mm long, with the remaining 1 mm assigned to a separate portion.  Modifying the

---

[3]  In its opening brief Dentsply did not address this issue in detail, merely mentioning the limitations relating to the length and adjacency of the taper portions of the obturators and arguing that Guidance had failed to sufficiently plead that the obturators practice these limitations.  D.I. 15 at 7.  As a result, Guidance did not address the issue in detail in its responsive brief.  D.I. 18 at 10–11.  It was not until its reply brief that Dentsply spelled out its argument on this issue in detail.  D.I. 19 at 4–5.

[4]  That is the portion between 9 mm and 13 mm, as designated in Figure 3, above.

exhibit in that fashion would result in the depicted file having three adjacent portions, each of the same length, as recited in the claim, assuming that the first portion is 3mm in length. The annotated figure below shows Guidance's suggested mapping of the three portions, consistent with its representations at the hearing.



**Figure 3:**
*Glider, Small, Primary, Medium and Large instrument*
*(In circles: ISO sizes).*

D.I. 1-1, Exh. 5 at 8 (annotations added by the court).

A patentee "need not prove [its] case at the pleading stage," and is "not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1351, 1354. Here, Guidance has pleaded that the Dentsply files (and, hence, the obturators) have a "decreasing rate of taper from tip to shank includ[ing] adjacent first, second, and third portions of equal length with only one rate of tape in each portion." D.I. 1 at 15. Those allegations plead all the pertinent elements

of the "taper portion" limitations in claim 1 of the '173 patent. Absent more, those allegations would be sufficient to defeat Dentsply's motion to dismiss that claim. However, Dentsply invokes the principle that "a patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims," *Bot M8,* 4 F.4th at 1346, and contends that through its reliance on Figure 3 depicted above, Guidance has effectively pleaded itself out of court.

For the reasons set forth above, I am not persuaded that Guidance's reliance on Figure 3 is fatal to its infringement claim as to the '173 patent. In fact, Figure 3, with a slight adjustment in the lines separating each of the sections of the files as suggested by Guidance, is sufficient to show three adjacent portions of equal length, each having a single rate of taper, and in which the rate of taper decreases from one portion to the next.[5] While Guidance's allegations and reliance on Figure 3 may be insufficient to support allegations of infringement by some versions or sizes of the depicted obturators,[6] its allegations are adequate to sufficiently allege infringement of at least some versions of the obturators.

Accordingly, Guidance's allegations relating to direct infringement of the '173 patent will not be dismissed.

---

[5] Among the files shown in Figure 3, the clearest example supporting Guidance's argument is the file on the bottom, in which the three sections closest to the shank all have a rate of taper of 4%. In that example, moving the line marked "13 mm" one millimeter to the right would result in three tapered portions of equal length (3 mm) with decreasing rates of taper from 5% to 4.25% to 4% from tip to shank.

[6] For example, the size 15 file, which is shown at the top of Figure 3, has portions with increasing taper from tip to shank, as opposed to the decreasing taper of the other four sizes. The size 15 file therefore could not satisfy the limitation requiring the portions to have decreasing tapers. Guidance's allegations also rely on the assumption that the first portion has a length of 3 mm, which may not be the case for some sizes or versions given the "1-3 mm" range denoted in Figure 3.

### B. Willful Infringement

To sufficiently allege willful infringement, a "complaint must allege that the accused infringer knew of the asserted patent, and knowingly or intentionally infringed the patent after acquiring that knowledge." *Robocast, Inc. v. Netflix, Inc.*, 640 F. Supp. 3d 365, 371 (D. Del. 2022) (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378–79 (Fed. Cir. 2020)).

### i. The '605 Patent

Dentsply argues that Guidance has failed to allege that Dentsply had knowledge of the '605 patent sufficient to support its claims of willful infringement.  In particular, Dentsply notes that Guidance's willful infringement allegations rely on a letter purportedly sent to Dentsply's counsel on August 24, 2020, but that Guidance has failed to attach the letter or reveal any details about its contents.  D.I. 15 at 10.  More generally, Dentsply argues that Guidance's allegations are merely conclusory and fail to allege underlying facts.  *Id.* at 10–11.  With respect to post-suit willful infringement, Dentsply argues that the filing of its complaint is insufficient to sustain its post-suit willfulness claims and that Guidance has otherwise failed to allege post-suit willful infringement. *Id.* at 13.

In response, Guidance argues that Dentsply has not disputed its allegations that Dentsply has had "actual knowledge of the '605 patent since at least August 24, 2020, when a letter was sent to Dentsply's counsel informing Dentsply that certain Dentsply Files [including the WOG Files] infringe claims of the '605 patent."  D.I. 18 at 13–14 (Quoting D.I. 1 ¶¶ 1, 48).  Guidance argues that its pleading asserted "sufficient facts alleging knowledge both of the patents and of their infringement to support its willfulness claims."  Nevertheless, Guidance asserts, "a notice letter does not need to include these additional details to allege knowledge of infringement." *Id.*

Guidance further argues that enhanced damages are "relief that can be granted upon a claim of direct, induced, or contributory infringement," but are themselves "not a claim upon which relief can be granted" and therefore should not be addressed at the Rule 12(b)(6) motion stage. *Id.* (quoting *Inari Med., Inc. v. Inquis Med., Inc.*, C.A. No. 24-1023, 2025 WL 2912857, at *3–4 (D. Del. Oct. 14, 2025)).

In reply, Dentsply acknowledges the court's *Inari Medical* decision, but points to cases in which other courts have dismissed willfulness allegations at the motion to dismiss stage. D.I. 19 at 11–12. Dentsply further submits that, even if Guidance's willfulness claim is allowed to proceed at this stage, Dentsply should be allowed to challenge it later in the case.

As Guidance correctly points out, willful infringement is not a distinct cause of action. Instead, it describes the level of an infringer's culpability that can trigger a court's decision to award enhanced damages. Nonetheless, courts often consider whether to dismiss allegations that infringement in particular cases was willful. *E.g.*, *CRH Med. Corp. v. MDE Med., LLC*, C.A. No. 25-95, 2025 WL 2506804 (D. Del. Sept. 2, 2025); *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 700 F. Supp. 3d 189, 202–03 (D. Del. 2023); *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 495 (D. Del. 2019). In light of those decisions, I will consider whether Guidance's allegations have sufficiently alleged willful infringement.

The Federal Circuit has found notice letters to be a sufficient basis to support a willful infringement pleading when those letters identify the patent at issue and notify an accused infringer of the patent holder's belief that the defendant's product infringes the patent. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 46 (Fed. Cir. 2024). Courts in this district have found that a pre-suit letter that "offers a license, identifies the Asserted Patents, names the accused [products], and provides notice of infringement" is sufficient to plead knowledge of the asserted patents and their

13

infringement. *Jackson v. Seaspine Holdings Corp.*, Civil Action No. 20-1784, 2022 WL 610703, at \*5 (D. Del. Feb. 14, 2022); *Cambria Cnty. Ass'n for the Blind and Handicapped, Inc. v. Affordable Wire Mgmt., LLC*, Civil Action No. 23-cv-80, 2024 WL 1328883, at \*2–3 (D. Del. Mar. 28, 2024).

Guidance's willful infringement allegations would have been more robust if Guidance had included the notice letter as an attachment or provided more details as to the contents of the letter. But Dentsply has not pointed to any authority requiring that a notice letter be incorporated into or attached to a complaint to support willful infringement allegations, although that is a common practice among litigants. Dentsply argues that Guidance's complaint fails to allege that the letter identified any specific asserted claim, identified any accused product (let alone the allegedly infringing features of any such product), or explained how Dentsply's products met each claim limitation. D.I. 15 at 10. But that argument seeks to impose a pleading requirement on Guidance beyond what the law requires with respect to willfulness. *See, e.g.*, *AlexSam*, 119 F.4th at 42, 46 (noting that a plaintiff is not required to map each claim limitation to an accused product or plead "knowledge of the specific patent claims a patentee later asserts in litigation" in order "to avoid dismissal under Rule 12(b)(6)").

Guidance's allegation that the August 24, 2020, letter to Dentsply's counsel informed Dentsply that the accused Dentsply Files infringed the '605 patent was sufficient to satisfy Guidance's burden of alleging that it informed Dentsply of the existence of the '605 patent specifically, accused the WOG Files[7] of infringement, and thus put Dentsply on notice of infringement as of that date. That is all that is required at the pleading stage.

---

[7] Guidance's complaint explicitly defines the term "Dentsply Files" to include the WOG Files specifically. D.I. 1 ¶ 182.

Because Guidance's pre-suit notice letter is sufficient to support its allegations of willful infringement of the '605 patent at this stage of the proceedings, I need not reach Dentsply's arguments relating to the sufficiency of the complaint to support post-suit willful infringement.

      *ii.  The '173 Patent*

Guidance's complaint similarly relies, in part, on the August 24, 2020, letter as the basis for alleging that Dentsply had pre-suit knowledge of the '173 patent.  Guidance bases that assertion on the fact that the '605 patent is the parent of the '173 patent and that Dentsply was made aware of the WOG Files and the '605 patent through the August 24, 2020, letter.  D.I. 1 ¶ 48.  Guidance also alleges that Dentsply was independently aware of the '173 patent because the Patent Office cited the published patent application that ultimately issued as the '173 patent, US-20110129793 ("the '793 publication"), as grounds for rejecting Dentsply's own patent applications.  D.I. 1 ¶ 49–50.  Guidance's complaint specifically alleges that "Dentsply reviewed the Office Action rejecting the claims of its '762 application, reviewed the descriptions of the claimed features in the published application for the '173 patent, and decided to abandon prosecution of [the] '762 application after concluding the claimed features were already described in the '173 patent."  D.I. 1 ¶ 50.

Dentsply argues that awareness of one patent, even one in the same family, is insufficient to establish knowledge of another patent.  D.I. 15 at 12.  Dentsply also argues that knowledge of a published patent application is insufficient to allege knowledge of any resulting patent that issues from that application.

In response, Guidance argues that the scope of any claims that issued from the '793 publication was not unforeseeable, because Dentsply received the office action rejecting its patent application in 2022, which was a number of years after the '173 patent issued.  D.I. 18 at 14.  Guidance further argues that knowledge of patent family members and related patents can be

sufficient to plead knowledge of a patent, and that its allegations that Dentsply reviewed the features of the '793 publication and decided to abandon its own application are sufficient to allege Dentsply's knowledge of the '173 patent. *Id.* at 15. Guidance further cites a number of cases that it asserts support its position that knowledge of a patent may be asserted by alleging knowledge of related patents. *Id.* at 15–16.

In reply, Dentsply argues that the cases that Dentsply cites do not support its position regarding knowledge of sibling patents, but instead involve additional facts and circumstances such as that a patent was listed on the face of an accused infringer's own patent, that the asserted patent was well known in the industry, or that the accused infringer having attended a presentation in which the asserted patented was described. D.I. 19 at 8–9.

As Dentsply has noted in its briefs, courts in this district as well as others have found that "[k]nowledge of a patent application alone . . . is not enough to establish knowledge of the patent(s) that issued from that application." *iFIT Inc. v. Peloton Interactive, Inc.*, No. CV 21-507, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022); *see also Software Rsch., Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1133 (N.D. Cal. 2018) (quoting *VIA Techs., Inc. v. ASUS Computer Int'l*, No. 14-cv-3586, 2015 WL 3809382, at *3 (N.D. Cal. Jun. 18, 2015)) ("The general rule in this district is that knowledge of a patent application alone is insufficient to meet the knowledge requirement for either a willful or induced infringement claim."). Those cases, as well as many others that stand for the same proposition, rely on *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985), which noted that to "willfully infringe a patent, the patent must exist and one must have knowledge of it" and that an application alone provides "no guarantee any patent will issue" because "a very substantial percentage of applications never result in patents" and "[w]hat the scope of claims in patents that do issue will be is something totally unforeseeable."

16

In the time since *State Industries* was decided, the Federal Circuit has clarified that "*State Industries* does not establish a per se rule," and has held that prior and subsequent case law requires a review of the totality of the circumstances presented in evaluating the knowledge element of a willfulness claim. *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018) (quoting *Shiley, Inc. v. Bentley Lab'ys, Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986)).  The Federal Circuit has further noted that much of the reasoning relied on by the court in *State Industries* and the cases that have relied upon it was based on the fact that patent applications were previously kept secret. *WCM Indus.*, 721 F. App'x at 970 n.4.  Because patent applications filed since November 2000 are now published, the court observed that "these concerns are no longer valid." *Id.*  Although the Federal Circuit has declined to overrule *State Industries* outright, the precedential value of *State Industries* has been substantially undermined.

While knowledge of a patent application may be an insufficient basis, standing alone, from which to infer knowledge of the ensuing patent, recent case law has made it clear that the totality of the circumstances must be taken into account in testing the strength of a party's allegation that the accused infringer had knowledge of a patent. *See Cold Spring Harbor Lab'y v. Guardant Health, Inc.*, No. 1:25-CV-00263, 2025 WL 2898942, at *7 (D. Del. Oct. 10, 2025) ("While each of these allegations would be insufficient if taken alone, together they create a plausible basis to infer that Defendant had knowledge of the Asserted Patents and notice of its potential infringement").  The cases that Guidance cites further support that understanding. *See* D.I. 18 at 15–16; *e.g.*, *LiTL LLC v. Dell Techs. Inc.*, C.A. No. 23-121, 2023 WL 7922176, at *2-3 (D. Del. Nov. 16, 2023) (finding that, when "[t]aken together," allegations that the asserted patent was listed on the face of multiple patents held by the accused infringer, the accused infringer had disclosed the asserted patent in multiple Information Disclosure Statements submitted to the Patent

Office, and that the asserted patent had been cited in a rejection of one of the accused infringer's patent applications were sufficient to "plausibly support an inference that Defendants had pre-suit knowledge" of the asserted patent); *Novozymes N. Am., Inc. v. Danisco US Inc.*, Case No. 1:19-cv-1902, 2020 WL 12895027, at *2 (D. Del. Feb. 12, 2020) ("[T]he Court need not evaluate whether each allegation, standing alone, gives rise to a reasonable inference that Danisco had pre-suit knowledge of the patent. Instead, the Court may consider the allegations as a whole.").

I find that Guidance has made allegations sufficient, when viewed in their totality, to survive a motion to dismiss based on Dentsply's asserted lack of pre-suit knowledge of the '173 patent.[8]  The strongest allegation of knowledge in the complaint is Guidance's allegation, upon information and belief, that Dentsply decided to abandon its application after reviewing the rejection and "concluding the claimed features were already described in the '173 patent."  The Third Circuit has noted that "pleading upon information and belief is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control.'" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)).  Guidance has made exactly this type of allegation, as information relating to Dentsply's actions and investigations in response to the rejection notice citing the '793 publication is wholly within Dentsply's control, and the conclusion that Dentsply learned of the '173 patent in the course of that proceeding is at least plausible.  I therefore find that Guidance has adequately pleaded that Dentsply had knowledge of the '173 patent sufficient to support a claim of willful infringement.

---

[8]  Dentsply will, of course, have the opportunity to rebut Guidance's allegations of willful infringement at a later point, and this opinion should not be interpreted as a bar on its right to present a defense on that issue.

## C. Induced and Contributory Infringement

As in the case of willful infringement, both "induced infringement [and] contributory infringement require[] knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

Dentsply makes arguments regarding Guidance's allegations of Dentsply's knowledge that are similar to those it makes relating to willful infringement. D.I. 15 at 14. For the same reasons as discussed above relating to willful infringement, I find those arguments unconvincing.

### i.  Induced Infringement

Dentsply argues that Guidance's allegations of induced infringement are inadequate because Guidance alleges the "'use' of the Accused Products by third parties without identifying who the underlying direct infringers are or how they have used the accused products in an infringing manner." D.I. 15 at 15. Dentsply also argues that Guidance has not sufficiently alleged direct infringement of Dentsply's products, which is necessary to support an induced infringement claim. Instead, Guidance references its earlier arguments relating to direct infringement to support that allegation. Because I have addressed those arguments above, there is no need to revisit those arguments here.

In response, Guidance argues that it not only has pointed to types of customers, but also has specified at least one individual that it alleges Dentsply has induced to infringe. Specifically, Guidance points to a Dentsply brochure that Guidance attached to its complaint, which quotes a dentist named Dr. Myriam Taveras describing her use of the WOG Files. D.I. 18 at 16 (citing D.I. 1-1 Exh. 3 at 4).

19

In reply, Dentsply argues that, even if Guidance need not name specific direct infringers, it must describe how any third party's use constitutes infringement, and that Guidance has failed to do so.  D.I. 19 at 6.

While Dentsply appears to concede this point in its reply brief, D.I. 19 at 5–6, the Federal Circuit has made it clear that a plaintiff is not required to identify a specific customer to support an induced infringement claim at the pleading stage.  *AlexSam*, 119 F.4th at 46 (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012)).  Guidance has met its pleading burden in this regard by alleging that Dentsply has induced "manufacturers, suppliers, and customers" to infringe through specifically alleged actions such as providing "advertising, marketing, sales, customer support, and other materials instructing customers and other users regarding how to use the Dentsply Files in the United States in a manner that infringes."  D.I. 1 ¶ 57.

Dentsply's argument that Guidance has failed to allege how those parties infringe the asserted patents is likewise unconvincing.  Guidance has attached several sales pamphlets and instructional materials to its complaint to support its allegations that Dentsply has induced its customers to use the WOG Files.  Furthermore, for the reasons discussed above, Guidance has sufficiently alleged direct infringement necessary to survive dismissal at this stage.  For the same reasons, Guidance has sufficiently alleged that use by a third party could constitute infringement.  Guidance has therefore sufficiently alleged that Dentsply has induced third parties to directly infringe.

### ii.  Contributory Infringement

Guidance's complaint alleges that the accused products support a claim of contributory infringement with respect to both the '605 and the '173 patents.  D.I. 1 ¶¶ 58, 66; *see* D.I. 15 at 16.

20

Guidance alleges that Dentsply infringes based on the use of the Dentsply files and obturator products "in practicing claims of the ['605 and '173 patents] while knowing that the Dentsply [Files and Obturator Products] are especially made and/or adapted for use in infringement" of the '605 and '173 patents.  D.I. 1 ¶¶ 58, 66.

Dentsply characterizes Guidance's theory of contributory infringement as treating each of the accused devices as "components" that are especially adapted for use in an infringing manner. Dentsply argues that an "entire device" cannot constitute a "component of a patented machine" for purposes of contributory infringement.  D.I. 15 at 17.

Whether an entire device can support a contributory infringement claim is an issue on which district courts have reached conflicting conclusions. *Compare, e.g., Conair Corp. v. Jarden Corp.*, No. 13-CV-6702, 2014 WL 3955172, at *5 (S.D.N.Y. Aug. 12, 2014) ("the fact that Conair's contributory infringement claim is essentially a 'repetition' of its direct infringement claim . . . is not fatal provided that the contributory infringement claim is otherwise adequately pled"), and *Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*, 403 F. Supp. 3d 571, 594 (E.D. Tex. 2019) (finding "unpersuasive" the argument "that the Accused Products cannot be considered a component of the patented invention because . . . the Accused Products themselves directly infringe") *with HSM Portfolio LLC v. Fujitsu Ltd.*, Civil Action No. 11-770, 2014 WL 4468088, at *1 (D. Del. Sept. 9, 2014) ("Toshiba's main argument is that the accused semiconductor chips are not components especially designed for an infringing product because they are accused of direct infringement in and of themselves.  I agree."), and *Tonal Sys., Inc. v. ICON Health & Fitness, Inc.*, Civil Action No. 20-1197, 2021 WL 1785072, at *5 (D. Del. May 5, 2021), report and recommendation adopted, No. Civil Action No. 20-1197, 2021 WL 5860783 (D. Del. Aug. 12, 2021) ("The Court agrees with Tonal that the 'Tonal Device itself cannot be a

21

"component" of a patented machine, because ICON [is alleging] that the Tonal Device is the patented machine, and thus directly infringes the asserted patents.'").

I find the reasoning of the courts that have dismissed such claims to be convincing, and I will follow the same approach. As Judge Andrews explained in the *HMS Portfolio* case, it does "not make legal sense" to allow a product that is accused of direct infringement to support a separate contributory infringement claim, because the "reason that it is necessary to plead that the component has no substantial noninfringing uses is that the component alone does not directly infringe." *HSM Portfolio*, 2014 WL 4468088, at *1; *see also id.* at *1 n.1 ("Section 271(c) codified [a] common type of [infringement], where a seller would sell a component that was itself not technically covered by the claims of a product or process patent but that had no other use except with the claimed product or process.") (quoting Robert L. Harmon, Patents and the Federal Circuit 553 (11th ed. 2013)).

In its complaint, Guidance pleaded its contributory infringement claims as to the '605 and '173 patents in a nearly identical manner. As to both patents, the pleadings alleged that Dentsply offered to sell, etc., Dentsply Files or Obturator Products "while knowing that the Dentsply [Files or Obturator Products] are especially made and/or especially adapted for use in infringement of the ['605 or '173 patents] and are not a staple article or commodity of commerce suitable for substantial noninfringing use." D.I. 1 ¶¶ 58, 66. In its brief in response to the motion to dismiss, however, Guidance makes an additional and separate argument in support of its contributory infringement claim regarding the '173 patent. Guidance argues that the WOG Obturator Cones are used together with the material layer consisting of an "epoxy-amine resin," and that the use of

the two components together infringes the '173 patent.[9]   The implication of that observation appears to be that each component contributes to the infringement, and therefore the sale or use of either constitutes contributory infringement of the patent that is directed to both.

The problem with that argument is that the '173 patent is directed to a single endodontic obturator that has several features: a tip region, a shank region, a tapered region, and a "material layer containing gutta-percha, rubber, or resin applied to the body" of the obturator.  '173 patent, col. 26, ll. 40–49.  There is no allegation or other suggestion that any part of Dentsply's accused obturator is sold separately, or that the material layer applied to the body of the obturator otherwise constitutes a separate "component, material or apparatus," as required by the contributory infringement statute, 35 U.S.C. § 271(c).

The WOG Files and WOG Obturator Cones are mechanical devices, and the '605 and '173 patents contain only apparatus claims reciting endodontic files and obturators, respectively. Guidance has not alleged that either the WOG Files or the WOG Obturators Cones form a component of a larger infringing apparatus, system, or method.  Its contributory infringement allegations instead rely explicitly on its assertion that the WOG Files and the WOG Obturator Cones themselves "embody each limitation of at least claim 1" of the '605 and '173 patents. D.I. ¶ 58.  Guidance's contributory infringement allegations assert nothing beyond its direct infringement allegations.  They are therefore insufficient to support a contributory infringement claim.

---

[9] While the complaint discusses the material layer, the complaint characterizes it as being part of the obturators themselves, and not as a separate accompanying product or component to be used in conjunction with the obturators, as Guidance now presents in its brief.  D.I. 1 ¶ 40.

Because I find that Guidance has not sufficiently pleaded contributory infringement, I need not address Dentsply's arguments relating to whether the WOG Files or the WOG Obturator Cones have a substantial non-infringing use.

### D. Patent Marking

Dentsply's final argument is that Guidance failed to comply with the patent marking statute, 35 U.S.C. § 287(a), and that Guidance therefore should be precluded from collecting damages for pre-suit infringement.  D.I. 15 at 19–21.

The Federal Circuit has adopted a burden-shifting regime with respect to the marking statute.  As a general matter, the court has explained, the patentee bears the burden of pleading and proving compliance with section 287.  *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see also Dunlap v. Schofield*, 152 U.S. 244, 247–48 (1894) ("By the elementary principles of pleading, therefore, the duty of alleging and the burden of proving" whether his patented articles have been duly marked or "that the defendant was duly notified of the infringement, and continued, after such notice, to make, use, or vend the article" is upon the plaintiff.).

But before that burden is placed on the patentee, the accused infringer "bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat*, 876 F.3d at 1368; *see also Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1359 (Fed. Cir. 2021); *Monolithic Power Sys., Inc. v. Reed Semiconductor Corp.*, Civil Action No. 23-1155, 2026 WL 995299, at *4 (D. Del. Apr. 13, 2026) ("*Arctic Cat* requires [the defendant] to make the first move: the defendant has the 'burden of production to identify unmarked products that it alleges should have been marked.'") (quoting *Arctic Cat*, 876 F.3d at 1369); *Intel Corp. v. Future Link Sys., LLC*, 268 F. Supp. 3d 605, 615 (D. Del. 2017) ("[T]he burden lies first with the

24

alleged infringer to identify products the patentee sold that practice the alleged patents."). As Judge Stark explained in a case similar to this one, the defendant's contentions with respect to marking "amount to mere speculation that some predecessor-in-interest or licensee may have practiced" the patent-in-suit. *In re Mobile Telecomms. Techs., LLC*, No. 16-699, 2017 WL 1053099, at \*6 (D. Del. Mar. 20, 2017). The plaintiff was not required to plead compliance with the marking statute "because there is no evidence that any predecessor-in-interest or licensee has ever practiced the patent." *Id.*

Dentsply failed to satisfy that initial burden of production: it made no showing that there were products on the market—whether sold by Guidance or a Guidance licensee—that qualified as unmarked "patented articles." Dentsply's failure to make such a showing is fatal to its marking argument.

Dentsply relies on several cases from this district to support its contention that Guidance was required to plead compliance with the marking statute even in the absence of any action by Dentsply to shoulder its burden to produce evidence that Guidance or a Guidance licensee had made or sold products that practice the asserted patents. Those cases do not support Dentsply's argument. To begin with, the court's decisions in *Bench Walk Lighting LLC v. Innotek Co.*, 530 F. Supp. 3d 468 (D. Del. 2021), and *Express Mobile, Inc. v. Liquid Web, LLC*, Civil Action No. 1:18-cv-1177, 2019 WL 1596999 (D. Del. Apr. 15, 2019), stand for the proposition that a patentee *who makes or sells a patented article* has the burden to plead compliance with the marking statute. *See* 530 F. Supp. 3d at 493; 2019 WL 1596999, at \*2. If it is undisputed, as it was in those cases, that the party makes or sells such articles, there is obviously no need for the defendant to satisfy its initial burden of showing that the plaintiff makes or sells products that practice the patent in suit. Those cases are therefore inapplicable to a case such as this one, in which the plaintiff has

25

denied engaging in any such activity with respect to products that practice any claims of the patent and has not admitted that any licensee has done so.

The district court's decision in *Horatio Wash. Depot Techs. LLC v. TOLMAR, Inc.*, Civil Action No. 17-1086, 2018 WL 5669168 (D. Del. Nov. 1, 2018), is also unhelpful to Dentsply. That case involved unusual facts in which the plaintiff was a successor in title to the patent in suit, and in which the plaintiff's predecessor had failed to mark products that practiced the patents in suit. The court held that the plaintiff was bound by the actions of its predecessor, a fact pattern that has no application to this case.

To the extent that Dentsply means to suggest that the burden-shifting regime set forth in *Arctic Cat* does not relieve a plaintiff of its burden to plead compliance with the marking statute at the outset of the case, even in the absence of a showing by the defendant that the plaintiff or its licensee made or sold articles that practice the patent, that argument would be contrary to the policy underlying the rule in *Arctic Cat*. The court in *Arctic Cat* explained that placing the burden of production on the defendant relieves the plaintiff of the need to guess about what products might be deemed to practice the patent. *Arctic Cat*, 876 F.3d at 1368 ("Without some notice of what market products [the accused infringer] believes required marking, [the patentee's] universe of products for which it would have to establish compliance would be unbounded. . . . Permitting infringers to allege failure to mark without identifying any products could lead to a large scale fishing expedition and gamesmanship.") The policy underlying the rule in *Arctic Cat* would be disserved by holding that even if the defendant does not satisfy its initial burden of production, the burden of pleading compliance with the marking statute still rests with the plaintiff.

Not surprisingly, courts in this district have characterized the *Arctic Cat* rule as relieving the plaintiff of its burden to plead compliance with the marking statute until after the defendant

26

has satisfied its initial burden of production. *See Lexos Media IP, LLC v. Jos. A. Bank Clothiers, Inc.*, Civil Action No. 17-1317, 2018 WL 2684104, at *2 (D. Del. June 5, 2018) ("[I]f certain products are not yet rightly a part of the case (because Defendant had not yet met its burden of production to specifically identify them), it stands to reason that Plaintiff would not have had to plead facts relating to those products."); *In re Mobile Telecomms. Techs.*, 2017 WL 1053099, at *6 ("MTel was not required to plead compliance with the marking statute . . . because there is no evidence that any predecessor-in-interest or licensee has ever practiced the patent.").

Dentsply argues that it was relieved of its burden of production because Guidance "affirmatively pleads that licensees exist, embodying products exist, and Guidance took alleged 'steps' related to its licensee's marking obligations." D.I. 19 at 10. In fact, however, Guidance did not represent that it had any licensees that made or sold such products. Rather, Guidance pleaded that it had not "made, used, offered for sale, or sold in the United States, or imported into the United States any products that practice any claim of the '605 or '173 patents." D.I. 1 ¶ 51. With respect to licensees, Guidance pleaded that it had "taken reasonable steps to ensure marking by any licensee making, using, offering to sell, and/or selling in the United States or importing into the United States a patented article." *Id.* That pleading stopped short of admitting that there are any such licensees; it therefore did not relieve Dentsply of its burden to point to products made or sold by Guidance or Guidance licensees that Dentsply believes practice the '605 or '173 patents.

In any event, even if Guidance had a burden to plead compliance with the marking statute, Guidance's allegation that it has not itself "made, used, offered for sale, or sold in the United States, or imported into the United States any products" that practice any claim of the '605 or '173 patents was sufficient to plead that it had no duty to mark any of its own products, since it has asserted that no such products existed. Likewise, Guidance's assertion that it "has taken

27

reasonable steps to ensure marking by any licensee" is sufficient to meet its pleading burden regarding any of its licensees' duties to mark.  *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (noting that "[a] patentee's licensees must also comply with § 287" and that the relevant question may be "whether the patentee made reasonable efforts to ensure third parties' compliance with the marking statute").  While Guidance could have provided a less equivocal statement as to whether or not the asserted patents had or had not been licensed and whether any such licensees did or did not produce or sell any practicing articles, Guidance's statement is sufficient to meet the requirement to plead compliance with the marking statute.

Dentsply's marking argument therefore fails for two reasons.  First, Dentsply has failed to meet its initial burden of production to show some activity by Guidance or a licensee that could have triggered a marking obligation for Guidance.[10]  Second, Guidance has adequately pleaded that it has no such obligation on the facts of this case.  I therefore reject Dentsply's argument that Guidance is ineligible for damages for pre-suit infringement because of a failure to comply with the marking statute.

Guidance argues in the alternative that it sufficiently alleged that it provided actual pre-suit notice of the '605 and '173 patents and therefore it is entitled to seek damages for pre-suit infringement even if it failed to satisfy the requirements of the marking statute in some respect.  I agree.  The parties' arguments relating to actual notice of infringement are substantively the same as their arguments for willful infringement relating to the August 24, 2020, letter and the other

---

[10]  The Federal Circuit has made it clear that the defendant's burden of production is a "low bar," in that the alleged infringer "need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Lubby Holdings*, 11 F.4th at 1359 (quoting *Arctic Cat*, 876 F.3d at 1368).

evidence bearing on the issue of pre-suit notice.  For the same reasons discussed above relating to willful infringement, I find that Guidance has sufficiently pleaded that Dentsply had notice of the '605 and '173 patents prior to the service of the complaint and continued to infringe thereafter. Because section 287 provides actual notice as an alternative to compliance with the marking statute's constructive notice provisions, Guidance would still be able to seek pre-suit damages for the '605 and '173 patents if it could persuade the finder of fact that Dentsply had knowledge of those patents prior to the service of the complaint, even if it were found that Guidance failed to satisfy its duty to mark products that practiced either of those patents.  *See Arctic Cat*, 950 F.3d at 864 ("A patentee who makes or sells patented articles can satisfy the notice requirement of § 287 either by providing constructive notice—*i.e.*, marking its products—or by providing actual notice to an alleged infringer.").  I therefore reject Guidance's contention that Guidance should be barred from seeking damages for Dentsply's alleged pre-suit infringement of either the '605 or the '173 patent.

## IV.    Conclusion

Dentsply's Motion to Dismiss, D.I. 14, is granted in part and denied in part.  Guidance's contributory infringement claims relating to both the '605 and '173 patents are dismissed.  In all other respects, Dentsply's motion to dismiss is denied.

IT IS SO ORDERED.

SIGNED this 10th day of August, 2026.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE